1834.

Smith
v.
Smith.

## N. SMITH *vs.* P. SMITH.

In a suit for a divorce, on the ground of adultery, if the defendant relies upon a condonation of the injury, or upon the adultery of the complainant, as a bar to the divorce, she must either insist upon that defence in her answer, or set it up by way of plea.

Although the defendant, in her answer, denies the adultery charged in the bill, she may also insist that if any act of adultery has been committed by her, there has been a condonation or forgiveness of the offence ; and she may also, in her answer, charge acts of adultery, on the part of the husband, in bar of the suit.

Where it appears, in any stage of the suit previous to a final decree, that the adultery complained of in the bill has been actually forgiven, and has not been revived by subsequent misconduct, or that it was committed with the concurrence, or by the procurement of the complainant, a divorce will not be granted. If there is reason, therefore, to suspect that such a defence exists, although the defendant neglects to set up the same, the chancellor, ex officio, may direct an inquiry to ascertain the fact.

Condonation is a conditional forgiveness of the injury ; and a repetition of the offence revives a condoned adultery.

Where an adulterous intercourse has once been established, if the parties thereto continue to reside together, it may be presumed that the criminal connection still subsists, although there is no positive evidence of the fact.

The adultery of the complainant, although committed after the commencement of his suit for a divorce, is a bar to such suit. And where the adultery of the complainant is committed after the answer of the defendant has been put in, she will be permitted, if she applies immediately after the discovery of the fact, to set up that defence in a supplemental answer, or by a cross bill in the nature of a plea *puis darrien continuance.*

Whether such defence may be made by a cross bill, in the nature of a bill of review, where the fact is not discovered by the defendant until after a final decree for a divorce ? *Quære.*

1834.

Smith
v.
Smith.

April 1.

THIS was a suit by the husband against his wife, for a divorce, on the ground of adultery. The defendant put in the usual answer, denying the adultery charged in the bill; upon which a feigned issue was awarded. Upon the trial, the complainant proved one act of adultery on the part of the defendant, and the jury gave a verdict against her. The cause being in readiness for hearing upon the pleadings and the verdict of the jury on the feigned issue, it was referred to the vice chancellor of the third circuit, to hear the same, and to make a final decree therein. Upon the hearing before the vice chancellor, the defendant's counsel produced a certificate of the circuit judge, that on the trial of the issue she offered evidence to prove a condonation of the offence testified to by the witness for the complainant. And upon which certificate they asked for a new trial; or for a reference to a master to take proof of the alleged condonation. This application was refused; and the usual decree for a divorce was entered; from which decree the defendant appealed to the chancellor. A petition was now presented in behalf of the appellant, in which she alleged that the testimony of the only witness by whom the adultery was proved, on the trial, was false. But inasmuch as she was unable to disprove the fact, she asked to be permitted to show a condonation thereof by a voluntary cohabitation of the husband with her after he was informed of the alleged adultery. The petitioner further stated, that since the decree of the vice chancellor, she had ascertained that the complainant, pending the suit and before the trial of the feigned issue, commenced an adulterous intercourse with his hired girl, and which had been continued down to the time of the decree. This recriminatory charge was also established by the affidavits of two witnesses, and was not denied on the part of the complainant. The petitioner, therefore, prayed for a reference to a master to take proof of the facts alleged in the petition as a bar to the divorce; or if the court should decide that the relief prayed for could not be granted by the chancellor, on the appeal, that then the appeal might be dismissed, without prejudice to her right to apply to the vice chancellor for the relief to which she might be entitled upon the facts

stated in the petition.  In opposition to the petition, the com-
plainant produced an affidavit, by which it appeared, that a
suit brought by him against the alleged adulterer was tried
at the same circuit and shortly before the trial of the feigned
issue in this case.   That upon the trial of that cause, many
witnesses were introduced to prove divers acts of adultery with
the defendant ; and that when she left the house of her hus-
band she went to the residence of the adulterer, and continued
to reside there with him until after the filing of the bill in this
cause.   Upon which trial the jury gave a verdict in favor of
the plaintiff, for $3000.   That immediately thereafter the
feigned issue came on to be tried, and while all the witnesses
examined in the other cause were present in court.   And that
as no testimony was given on the part of the defendant, the
complainant's counsel supposed it sufficient to prove a single
act of adultery, and therefore called but one witness on that
trial.

*M. T. Reynolds,* for the complainant.

*S. Stevens & S. Cheever,* for the defendant.

THE CHANCELLOR.  As the case stood before the vice chan-
cellor, the decree was certainly correct ; and there is no foun-
dation whatever for the appeal.   The circuit judge was right
in rejecting the evidence, offered by the defendant, to prove a
condonation of the adultery which had been established by
the testimony of the witness.   The only questions properly
triable at the circuit, on the pleadings in this case, were as to
the defendant's guilt or innocence in relation to the several
charges of adultery stated in the complainant's bill, and which
were set forth in the circuit roll.   In a case of this kind, if
the defendant wishes to prove a condonation of the offence,
or to establish a recriminatory charge in bar of the divorce,
strictly, she should urge it by way of special plea, or insist
on it in her answer as a defence.   Although she denies
the adultery charged in the bill, she may in the same an-
swer insist that if any act of adultery has been committed,
there has been a condonation, or forgiveness of the offence,

1834.

Smith
v
Smith.

by a voluntary cohabitation, or otherwise. And she may also, in her answer, charge other acts of adultery, on the part of the husband, as a *compensatio criminis* or legal bar of the suit for a divorce, in case the adultery charged in the bill shall be established by proofs. Where a condonation, or a recriminatory charge, is set up in the answer, if an issue is awarded to try the charges of adultery contained in the bill, the same jury will be directed to inquire as to the truth of the alleged condonation, or the recriminatory charge; and the issues sent down to the circuit to be tried will be framed accordingly. (*See Rule* 168.) If the adultery of the defendant is admitted by the answer, and a condonation of the offence is set up in bar thereof, the truth of the alleged defence may be inquired into upon the reference to the master to inquire and report as to the facts charged in the bill; and a special direction to the master to that effect may be inserted in the order of reference, under the direction of the court.

If the defendant in this case had a good defence, by reason of a condonation, which, through mistake or inadvertence, she had neglected to set up in her answer, she should have applied to the court the first opportunity, for leave to amend her answer, or to file a supplemental answer, for the purpose of putting that fact in issue. If it was not too late to set up that defence after the trial of the feigned issue, and I am inclined to think it was not if a sufficient excuse had been shown, she should have made a special application to the court immediately after the trial of the issue; and before the cause was sent down to the vice chancellor for a final hearing and decree upon the equity reserved. This court, however, will in no case dissolve a marriage contract, on the ground of adultery, where it appears upon the pleadings or proofs, properly taken, that the injured party, with a full knowledge of all the facts, has actually forgiven the injury, and which has not been revived by subsequent misconduct; or where it appears that the adultery was committed by the procurement, or with the connivance of the complainant. The chancellor, therefore, at any time before a final decree in the cause, if there is reason to believe such a defence exists, may ex officio direct an inquiry to ascertain the fact. Such an inquiry, however,

1834.

Smith
v.
Smith.

is not a matter of right on the part of the defendant. It is a matter resting solely in the discretion of the court, to enable the chancellor to guard against fraud or collusion, in the exercise of a jurisdiction in which, as I have reason to believe, both parties are sometimes concerned in attempts to deceive and mislead the court in reference to the real facts in the case. (*See* 1 *Consist. Rep.* 292. 1 *Hagg. Eccl. Rep.* 752.)

In the present case, the vice chancellor, who had a full knowledge of the facts from what had transpired before him at the circuit, was unquestionably right in declining, ex officio, to order an inquiry to ascertain those facts, as they were wholly insufficient to justify the court in refusing the divorce. It does unquestionably appear that while the defendant continued to live with her husband, he was either more incredulous or more forbearing than most men would have been under similar circumstances. And he probably would have forgiven his wife and continued to live with her, even after he had reason to believe she had been unfaithful to his bed, could she have been prevailed upon to change her course of conduct and to reject the improper attentions of her paramour. But there was nothing adduced in evidence on the trial of the crim. con. suit to induce a belief that the husband intended to connive at, or to encourage, an illicit intercourse between his wife and another. Condonation is a conditional forgiveness, and a repetition of the injury revives the condoned adultery. (*Durant* v. *Durant*, 1 *Hagg. Eccl. Rep.* 745.) And I think there was sufficient evidence on the trial to satisfy any reasonable mind that the adultery of the wife was continued after she left the house of her husband ; subsequent to which time there is no pretence of cohabitation with the complainant, or of actual forgiveness. And if such subsequent adultery can fairly be presumed, then all the former adulteries are revived. In *Turton* v. *Turton*, (3 *Hagg. Eccl. Rep.* 350,) Dr. Lushington, in delivering the opinion of the consistory court of London, says, " I take it to be clear that according to the doctrine of this court, and according to all the principles in similar cases, if it can be once shown that the parties had been cohabiting in an illicit connection, it must be presumed, if they are still living under the same roof, that the criminal intercourse subsists, notwith-

1834.

Smith
v.
Smith.

standing those who live under the same roof are not prepared to depose to that fact." And certainly, if courts of justice are to draw the same conclusions which every body else would draw from the same facts, when it is once established that an adulterous intercourse has commenced between parties, and they are found living together, under circumstances which would induce every unprejudiced mind to conclude their inclinations had not changed, the fair presumption is that the illicit intercourse is still continued. What, then, were the facts here? The fact of adultery having been committed by this woman with a particular individual, at different times, and in various situations, before she left the house of her husband, is satisfactorily established by the testimony of several respectable witnesses. And when she left her husband, she went immediately to the house of her paramour, who received her, and assisted her to carry off her clothes; and she continues to live with him. It is true he had a wife residing at the same place; but it appears from the testimony of one of the witnesses, that even the presence of the wife was not sufficient to restrain the indecent familiarities of the defendant with the adulterer; as the wife came into the room while her husband had his arms around the defendant's neck. Upon the whole, I am satisfied that if the whole testimony which was adduced in the other case, had been gone into upon the trial of the feigned issue, and the question of condonation had been properly before the jury, they must have arrived at the conclusion that the adulterous intercourse continued long after the pretended acts of forgiveness on the part of the complainant.

The recriminatory charge, of an adultery committed by the complainant, is of a very different charac er. If a husband, who seeks to obtain a divorce on account of the criminal conduct of his wife has himself been guilty of the same offence, whether before or after the adultery of the wife, it is a conclusive bar to the suit. (*Forster* v. *Forster*, 1 *Hagg. Consist. Rep.* 144. *Astley* v. *Astley*, 1 *Hagg. Eccl. Rep.* 714. *Poynter's Mar. & Div.* 224. 2 *R. S.* 145, § 42, *sub.* 4.) It appears from the petition and affidavits, and the fact is not denied on the part of the complainant, that while he was carry-

ing on this suit against his wife, to obtain a divorce on account of her adultery, an adulterous intercourse, on his part, was commenced with his servant girl, which continued down to the time of the decree. Although this misconduct of the complainant did not occur until after the commencement of the suit for a divorce, and after a feigned issue had been awarded, it would have been as effectual, to bar the suit, if it had been discovered in time, as if it had occurred previous to the adultery of the wife. (*Poynter's Mar. & Div.* 224. *Brisco* v. *Brisco,* 2 *Addams' Eccl. Rep.* 259.) Upon a proper application, therefore, even after the trial of the feigned issue, and at any time before the final decree, if such application had been made immediately after the discovery of the fact, it would have been the duty of the court to have permitted the defendant to put in a supplemental answer, or to file a cross bill, in the nature of a plea puis darrein continuance at law, for the purpose of setting up this new defence. (*See Hopk. Rep.* 27. *Willis on Pl.* 364.) Whether such a defence may be brought before the court by a cross bill in the nature of a bill of review, when the fact is not discovered until after a final decree, is a question that does not appear to have been decided in any case which I have been able to discover. I shall, therefore, express no opinion on that question, as it cannot be decided on the present application. If relief of that kind can be obtained after such a lapse of time, the proper course for the appellant appears to be to dismiss her appeal, and to apply to the vice chancellor, by whom the final decree in the cause was made, for leave to file such a bill.

As there is no foundation for the appeal, the court need not, in this case, preclude the possibility of such an application, by a technical affirmance of the decree. I shall, therefore, direct the appeal to be dismissed with costs, to be paid by the appellant, including the costs of opposing this application ; and without prejudice to any application to the vice chancellor which the defendant may be advised to make.