ELIZABETH SIMONS v. PAUL J. SIMONS.

In an action for divorce, although the marriage be expressly admitted by the answer, and the verdict of the jury find all the allegations in the petition, including the allegation of the marriage, to be true, yet if, on appeal, there is a statement of facts, and it does not appear therefrom that the marriage was proved, independently of the admissions in the answer, the decree for a divorce must be reversed.

In an action of divorce, by the husband against the wife, on the ground of adultery, the testimony of the *particeps criminis* to the fact of adultery, against the wife, is but weak, if admissible at all.

It seems that an action by the husband against the wife, for a divorce on the ground of adultery, is not of itself, although unsustained, such an outrage as will entitle the wife to a divorce.

See this case as to assignments of error.

Error from Walker. Action commenced March 25th, 1854, by the appellee against the appellant, for a divorce on the ground of adultery. Answer, admitting " that she was married to the plaintiff at the time charged in the petition," but denying the other allegations in the petition. Amended an-

swer praying for a divorce on the ground of the outrage perpetrated by her husband in charging her with the infamous crime of adultery, and bringing this action, whereby their living together was rendered insupportable. Verdict and judgment for the plaintiff. Motion for new trial on the ground that the verdict was contrary to the law and evidence; overruled.

The testimony was as follows: A. Cartwright Logan testified that he had seen a man in bed with defendant, in her room, at Mrs. Gray's, one of the witnesses in this case; it was in the night, and there was no light in the room; there was no other man in the room with defendant but himself; he saw this more than once, about the time and place charged in the petition. On cross-examination, he said, he had written the letter handed to him; he had an object in writing same; no man had a right to enquire into his business.

The letter was as follows:

HUNTSVILLE, August 21st, 1854.

*Dear Sir:* I received yours of the second, and would answered it sooner had I been able. I have been sick for the last week, and am not able to sit up to write this, was it not for letting know about what you seem anxious to know. And I am glad that I can say with a clear conscience, that I never was guilty of even attempting such a thing as to try to seduce a woman, especially a man's wife. As to Mrs. Simons' virtue I have no cause to doubt. You must excuse my writing, as I am so weak, I cannot hold my hand steady. I remain, &c. (Signed) A. C. LOGAN.

It did not appear to whom the letter was addressed.

Mrs. Gray testified that defendant boarded at her house three days and nights, about the time at which the adultery was charged to have been committed; that Mr. Cartwright Logan staid at her house two nights, to her knowledge, while the defendant was there, and that she sent him word not to visit her house any more; Mrs. Simons slept with her room door open every night, and witness thought defendant was too

fond of Mr. Logan's company was her reason for sending the word to Mr. Logan not to visit her house; witness requested defendant to leave her house because she thought defendant and Mr. Logan were too thick, and defendant objected to any of witness's girls, or any other person about the house, sleeping with her. She saw Mr. Logan in defendant's room, after supper one evening, holding a candle for defendant, while she was fixing on some part of her dress to go to the show that night; defendant's conduct towards Mr. Logan was very kind, loving and affectionate; Mr. Simons had started to South Carolina on business.

On cross-examination this witness said that Mrs. Nancy Blackburn was at her house at the time. In answer to a question whether defendant did not sleep with Mrs. Blackburn while at her house, witness said she did not; Mrs. Blackburn and defendant were intimate friends at that time. In answer to a question about the intention of defendant to go to the eastern part of the State, and about her being prevented from starting at a particular time, the stage being crowded, witness replied that she "did not know; defendant had left her house at the time, and was at her father's."

Mrs. Blackburn testified that she staid all night at Mr. P. J. Simons' residence, the night after Mr. Simons started for South Carolina; witness' brother, Cartwright Logan, was there; he staid all night at witness' request; he slept in a room where, when the door was open, his bed could be seen from the room witness was in; saw no body in the room with him that night. In answer to a question whether defendant left witness' bed that night, and where she went to, witness replied, "She slept in the same bed with me, and if she left "the bed that night I did not know it. I never missed her "during the night." Same month, witness saw defendant at Mrs. Gray's, and Cartwright Logan was there also; never saw any gentleman in defendant's room there, neither by day nor by night.

Cross-examined. Staid one night with the defendant at

Mr. Simons' residence, and returned next day to Mrs. Gray's. I went to the show with her and was with her for several days afterwards. I thought defendant acted curiously; did not think she kept herself in her place as she ought, but I never, at any time, saw anything criminal in her acts.

The testimony about the property is omitted, not being material to this report. The defendant filed a petition for a writ of error, which, after describing the judgment and decree, continued, " and within the time prescribed by law your pe-" titioner filed a motion for a new trial, which was overruled " by the Court; all of which judgments, decrees and rulings " of said Court are and were erroneous, and all of which said " judgments, decrees and rulings of said Court, are hereby as-" signed as error ; and your petitioner further assigns as error " the granting of any judgment in favor of Paul J. Simons, " because the petition of Paul J. Simons contains no cause of " action whatever," &c. There was no other assignment of errors.

*W. A. Leigh,* for plaintiff in error. I. In all cases of divorce, the decree of the Court must be rendered upon full and satisfactory evidence, independent of the confessions or admissions of either party. Now it is apparent and clear that there is one link in the chain of evidence, necessary to the attainment of the object sought, wanting. Where is the record or the witness to prove that the parties were ever married ? And will the Court grant a divorce when it does not appear from independent proof that the parties have been married ? The proof of such fact at the trial is indispensable. (6 Tex. R. 16.)

II. Again: the evidence upon which the Court below acted, to my mind is not satisfactory. First, because the only witness who testified to the adultery was, according to his own representations, a party to the crime.

But observe in the statement of facts a letter written by him to some gentleman. In this letter he declares and represents

Mrs. Simons, the plaintiff in error, to be a virtuous woman—
that he knew nothing against her, &c. He is not obliged nor
compelled to answer a question which may degrade him.
Why, then, this change? But hear the testimony of his sister
Mrs. Blackburn. She states that she was on terms of inti-
macy with Mrs. Simons, and that she never saw anything
criminal in her conduct, though she regarded it at sometimes
as imprudent. Mrs. Gray seems to think her conduct im-
prudent, but saw nothing criminal. The letter above referred
to, and the deposition of Mrs. Blackburn, go far to sustain the
reputation of Mrs. Simons, and these ought, in my opinion, to
be received in preference to the evidence of Logan. All the
presumptions of law are in favor of innocence. As to the suf-
ficiency of Logan's evidence to establish such a charge, see 2
Greenleaf, page 43, Sec. 46, and the authorities cited.

III. By examining the amended answer of the plaintiff in
error, the Court will observe that she is desirous of obtaining
a divorce, &c.

But before concluding this brief, it may be proper to remark
that the fact of the finding of the jury being in accordance
with Logan's evidence should not prevent the Court from
taking a different view of the testimony, as it probably would
do in ordinary cases. It is true that the statute requires that
a jury shall pass upon the facts, but it is equally true that the
testimony should be satisfactory to the Court. The Court
must be satisfied as well as the jury.

*Yoakum & Branch*, for defendant in error. We find no
errors assigned here. The general statement in the petition
for writ of error, assigning all the proceedings in the cause as
error generally, is believed to be not such an assignment of
errors as our statute contemplates.

LIPSCOMB, J. This was a suit brought by the defendant in
error, against the plaintiff in error, for a divorce from the

bonds of matrimony, on the ground of two distinct acts of adultery with one Cartwright Logan. There was a trial, and a verdict for the plaintiff, in the Court below, on which a decree was entered up, dissolving the bonds of matrimony subsisting between the parties. The defendant below, the wife, brings the decree before this Court for revision, and the insufficiency of the evidence to support the decree is assigned and mainly relied on to reverse the decree. The first ground of the insufficiency of proof is supposed to be in this, that the marriage of the parties at the time and place alleged in the petition was not proven. There can be no doubt but the fact of marriage ought to be proven, because, if there has been no marriage, there can be no divorce; (see Wright v. Wright, 6 Tex. 16;) but the answer in this case admits the marriage as charged and set out in the petition. The plaintiff in error supposes this admission of the wife, in her answer, cannot dispense with the proof of the fact by proper evidence; and he rests his objection on Art. 856, Hart. Dig. The portion of the Article relied on is as follows, i. e.: "but the decree of " the Court shall be rendered upon full and satisfactory evi- " dence, independent of the confession or admission of either " party, and upon the verdict of the jury affirming the mate- " rial facts alleged in the petition." That the averment of the marriage is material in the petition, is not an open question in this Court. In Wright v. Wright, above cited, the language of the Court is, "The intermarriage of the plaintiff " and defendant, and its continuance to the present time are " alleged; there are essential preliminary averments, and their " proof at the trial is indispensable." It being so material a fact, it must be proved at the trial independent of any admission or confession of the party.

There is, however, another objection to the sufficiency of the evidence, more important because it goes to the grounds of the suit, the criminality of the defendant. The charge of adultery was not proven positively but by one witness, and to the disgrace of manhood, that witness the alleged paramour

in the adulterous intercourse. It could hardly be questioned that he might have refused to testify, because as a *particeps criminis*, he could not be required to inculpate himself; and further, it might have been furnishing evidence against himself in a suit against him at the instance of the husband. Professor Greenleaf dismisses this kind of evidence in a very summary way. He says "the paramour is an admissible witness; but being *particeps criminis*, his evidence is but weak." (2 vol. Sec. 46.) It was not corroborated by any other witness or circumstance. Mrs. Gray testifies nothing that would be in the slightest degree incompatable with innocence; and the other female witness, called too by the plaintiff, and sister to the alleged paramour, so far from criminating, exculpates her from the charge. If we were to stop here, this paramour's evidence, in the language of Professor Greenleaf, would be weak. But it seems that a letter was written by this witness and read in evidence, in which he puts the seal of condemnation and falsehood upon the charge, in the most emphatic terms. This letter, it is true, could not destroy the admissibility of his evidence, but it certainly renders that that was weak before, still weaker, and leads to a strong suspicion of his wish to acquire an infamous notoriety by boasting of favors never received. The sacred marriage bond can never be legally dissolved on a charge however grave, if only supported by such weak, flimsy and incredible testimony. We are disposed to question the propriety and policy of the rule even, admitting the paramour to the witness stand, under the brand of infamy, as Professor Greenleaf's rule admits him. The question has not been viewed in all of its tendencies. He is only viewed as a *particeps criminis*, ready to swear to his own guilt; and if we were certain that such witness would be only called on when there was in truth guilt, it might well be allowed them to swear with the express understanding that their evidence was weak, and, without corroboration, would be insufficient to establish the fact of guilt. But we have reason to believe that such testimony would be often offered when there had been no guilt committed.

We will suppose that when this witness is put upon the stand to prove the fact, if it is in his power to answer truthfully in the affirmative, the temptation to one who had a single spark of generous, manly, chivalric feeling to woman in his bosom, would be so strong to screan and protect the guilty fair one, that there would be imminent danger of his being driven to the commission of perjury. He would be further induced to adopt this alternative, from a knowledge of the fact, that if he answered in the affirmative he thereby fixed on himself the indelible seal of infamy, that would exclude him from the companionship of all men of honorable feeling. But suppose he was to refuse to answer, upon the ground that he could not do so without criminating himself, although by doing so, he could prevent a conviction of guilt, yet the female, by his silence, would have, in the opinion of the public, the seal of condemnation fixed on her reputation, never to be effaced. And this would be the result, even if she was in truth innocent, and the witness to play the part for which he was called, by an unkind and inhuman husband, to destroy the reputation of his innocent wife, by the witness standing mute when questioned, when if he had answered with truth, he could not have said anything against her innocence.

Such being the effect of permitting such persons to take the witnesses stand, when it is conceded that he was barely admissible, and entitled to not much credit, we believe that policy forbids his being sworn at all in such cases, when the prospect of advancing the truth falls infinitely short of the evil that would be most likely to result from his swearing at all.

The decree must be reversed and the cause remanded to the Court below.

The filing the petition for a divorce, grounded upon the supposed adultery of the wife, is not, of itself, sufficient ground to support the cross-petition of the wife, praying to be divorced from her husband. If the husband should fail in his suit for the divorce, and afterwards should continue to asperse

her character, publicly denouncing her as an adulteress, how far such facts would sustain the wife's application for a divorce, would require some consideration.

Reversed and remanded.