McADAM, J.
As the justice at the close of the landlords’ case overruled the various objections made by the attorneys for the tenant and undertenant, and apparently agreed with the landlords in their view of the law, it is not necessary to consider the questions thus raised. There was no such severance of the tenancy as would operate to defeate the proceeding.
The justice took evidence pro and con, and, after reserving his decision, finally found for the tenants. As no reason have been assigned for the decision, we will assume, from the rulings at the trial, that the justice found for the tenants on the facts. This leads to the inquiry whether the exceptions taken by the landlords to the exclusion of evidence require a reversal of the order.
The proceeding was institute by the landlords to recover possession of the premises No. 93 Bowery, known as the “Shelbourne Hotel,” upon the ground specified in the fifth subdivision of section 2231 of the Code. The petition, after setting forth the facts, alleged that “the said premises are now being used and occupied as a bawdy house, and house of assignation for lewd persons, for purposes of prostitution, and as a place of resort for such persons for similar purposes.” The charge was denied, and, in their effort to establish it, the landlords called several witnesses, among them police officers, to prove what occurred from June, 1895, up to October 11, 1895, when the proceeding was begun. The justice excluded all evidence of what occurred prior to Octo *133 bev 1, 1895, saying he would exclude all testimony as to the character of the premises in the months of June and September, and admit testimony on that point for a reasonable time prior to the commencement of the proceeding; and, according to the rulings subsequently made, everything which occurred prior to the latter part of September, 1895, was held not to be within such reasonable time. The landlords’ counsel excepted to the ruling, and stated he proposed to prove that the premises were kept as a bawdy house from June continuously. This statement was made to demonstrate the materiality of the proofs offered, if the purpose was not otherwise apparent. The occupants of the premises were the same during the entire period covered by the proposed inquiry; and, when a condition of things is once established, there is a legal presumption of continuance. Thus, as was said by the court of appeals, in Wilkins v. Earle, 44 N. Y., at page 192:
“A partnership, once established, is presumed to continue. Life is presumed to exist. Possession is presumed to continue. The fact that a man was a gambler twenty months since justifies the presumption that he continues to be one. An adulterous intercourse is presumed to continue. So of ownership and nonresidence.”
And see McMahon v. Harrison, 6 N. Y. 443; Graham v. Chrystal, 2 Abb. Dec. 263; Smith v. Smith, 4 Paige, 432.
The evidence excluded was certainly material on the question of scienter. It might have established that the same women had, from June until October, frequented the premises with different men, and occupied rooms, so as to exclude the idea of surreptitious immoral use of the premises, without the knowledge or acquiescence of those in the responsible control and direction of them. It was not intended to show isolated acts, but a systematic, continuous course of pandering to vice, from June to October 11th, when' the proceeding was instituted. It might, if it had been received, have furnished such strong corroboration of the landlords’ proof as to lead to a different conclusion from that arrived at bv the justice. The allegation, in the petition, that the premises “are now being used and occupied as a bawdy house,” etc., did not necessiarily mean that they, at the date of the petition, were for the first time being so used. It opened a broad field of inq uirv, whether the premises were then, and had prior thereto been, devoted to that purpose; and the longer they had been so used, if the use was continuous, the stronger the case presented against the evil doers would have become.
The offense charged consisted of a series of transactions; and where they intermix, as they do in cases of this kind, the court must go through with the detail. Rose. Or. Ev. (10th Ed.) 90, 91. As, in counterfeiting, it is competent to receive evidence of other transactions, though they amount to distinct offenses, and of the demeanor of the prisoner'on other occasions, from which it might be fairly inferred the prisoner was conscious of his guilt while he was doing the act charged in the indictment, so, in regard to the charge of fraud, evidence of contemporaneous frauds may be given in corroboration of evidence of the fraud complained of, and the *134 proofs may, when taken together, clearly establish the offense. See 1 Phil. Ev. (Oow., H. & E. Notes) 750, 751, and cases collated, in 3 Abb. Dig. (New Ed.) p. 206, par. 3081.
In a charge made up of independent acts of a continuous character, like that in question, it is dangerous to confine the complaining party to a period of two weeks. Courts are more liberal than this in admitting proof of contemporaneous frauds. Bliss v. Sickles, 142 N. Y., at pages 649; 59 St. Rep. 168. To put a barrier at such a period, and say to a complaining party that he cannot go beyond it, may exclude the strongest proofs he has at hand; and, while the limit may be to an extent discretionary, 'we think the discretion was not wisely exercised in this instance.
When an objection to evidence has once been made and overruled, it is not requisite to repeat the objection, if subsequent questions call for the same class of evidence relating to the same subject matter. Church v. Howard, 79 N. Y. 415, 421. And where competent evidence has been rejected, error is proved, and injury will be inferred. Greene v. White, 37 N. Y. 405, and kindred cases.
For these reasons, and without passing on the other questions presented by the record, the final order must be reversed, and a new trial ordered, with costs to the appellants to abide the event