(26 Civ. Proc. R. 161; 19 Misc. Rep. 236.)

## KARGER v. KARGER.

(Supreme Court, Special Term, New York County. January, 1897.)

1. DIVORCE—DEFENSES—CONNIVANCE AT ADULTERY.
　　Connivance by a husband at his wife's adultery is established by evidence that, suspecting her of going to a certain room for the purpose of adultery, he concerted with the owner of the house to detect her, was privy to an arrangement of the surroundings by the owner which gave an appearance of security from detection, concealed himself where he could see and hear what transpired in said room, and, after the consummation of the offense, rushed into the room.[1]
2. SAME—CONDONATION—EVIDENCE.
　　Intercourse with a wife after knowledge of her adultery is established, where her testimony thereto, though contradicted by the husband, is corroborated by the fact that after such knowledge by the husband the parties lived in the same house, occupying connecting sleeping rooms and eating at the same table, she doing the house work, and he supporting the family.

---

[1] See Pettee v. Pettee (Sup.) 28 N. Y. Supp. 1067.

**B.** SAME—DEFENSE NOT PLEADED—CONDONATION.

A divorce should not be granted where condonation or connivance appears, though such defenses were not pleaded.

Action by Robert Karger against Hedwig Karger for an absolute divorce. Judgment for defendant.

John J. Brady, for plaintiff.

August P. Wagener, for defendant.

PRYOR, J. Upon the evidence the adultery of the defendant is an inevitable conclusion. Still, the plaintiff is not entitled to a divorce if the offense was committed by his procurement, or with his connivance. Code Civ. Proc. § 1758. Suspecting a criminal connection between his wife and one Stein, the plaintiff concerted with the witness Wolf a scheme for detecting the defendant in the act. She was in the habit of visiting Stein at his room in Wolf's house; and the arrangement was that the plaintiff should go to the house, and Wolf "would show it to him." He went to the house, and was so situated that, though himself concealed, he could observe the approach of his wife. She entered the house, and met Stein. Meanwhile Wolf, with plaintiff's privity, had so disposed the company and fastened the doors as apparently to assure the defendant of security in the illicit intercourse. From the ambush in which they lay, Wolf, in company with the plaintiff, heard Stein invite the woman to his embraces, and saw them go to bed together. Then, after waiting "two or three minutes," the husband and witness rushed into the room, and surprised the parties in the act. This is the adultery of which I am constrained to find the defendant guilty. But was not the offense committed with plaintiff's connivance? Not only did he permit it to be done, when a look or a word from him would have prevented it; not only did he suffer it to proceed in his presence, and delay interruption until he supposed it consummated,— but through the agency of Wolf he promoted and facilitated the adultery. The inference is irresistible that the plaintiff was willing that the defendant should commit the act in order that he might obtain a divorce. Morrison v. Morrison, 136 Mass. 310. "The connivance may be a passive permitting of the adultery, as well as an active procuring of its commission." 2 Bish. Mar. & Div. § 6. "If the husband receives a caution concerning the conduct of his wife, or if he sees what a reasonable man could not see without alarm, * * * he is called upon to exercise a peculiar vigilance and care over her; and if he sees what a reasonable man could not permit, and makes no effort to avert the danger, he must be supposed to see and mean the consequences." 2 Bish. Mar. & Div. § 21. "This corrupt consent will be presumed from passive as well as active encouragement of the offense." Schouler, Husb. & Wife, § 540. "Mere passive connivance is as much a bar as active conspiracy." Lord Stowell, in Moorsom v. Moorsom, 3 Hagg. Ecc. 105. "The plaintiff had the power, and it was his duty, to prevent the debauchment of his wife." Gilbert, J., in Bunnell v. Greathead, 49 Barb. 106. "It would be a dangerous principle to establish that a husband who has suspicions

of the infidelity of his wife shall be allowed to lay a train which may lead her to the commission of adultery, in order that he may take advantage of it to obtain a divorce." Pierce v. Pierce, 3 Pick. 299. I am aware of the decision in Robbins v. Robbins, 140 Mass. 528, 5 N. E. 837, but cannot recognize it as an authority. 33 Alb. Law J. 401. A divorce, again, is not to be allowed "where the offense charged has been forgiven by the plaintiff"; and "voluntary cohabitation with knowledge of the fact" is proof of condonation. Code Civ. Proc. § 1758. The plaintiff denies intercourse with the defendant after knowledge of her guilt, but she affirms such intercourse, with particulars of time, place, and circumstance. True, the defendant swears falsely as to the fact of adultery. Nevertheless, she may speak the truth as to the forgiveness. Dunn v. People, 29 N. Y. 523. I should disbelieve her, however, were she not corroborated by uncontroverted proof. From the discovery of the adultery down to the day of trial, the plaintiff and defendant have lived together in the same apartment, occupying connecting sleeping rooms and eating at the same table; have reciprocated conjugal kindnesses, she cooking for him, and he tending and caressing her in sickness; he providing for the family, and she discharging the household duties. Such relations between the parties, since the adultery, constitute in themselves proof of cohabitation and forgiveness. "Married persons living in the same house are presumed to have matrimonial intercourse," unless the contrary fact be shown. 2 Bish. Mar. & Div. § 46. "Cohabitation will be inferred, nothing appearing to the contrary, from the fact of the living together of husband and wife." Burns v. Burns, 60 Ind. 259, 260. Upon the question of condonation, the weight of evidence is, in my judgment, with the defendant. The proof of connivance and forgiveness is not to be disregarded because the defenses were not pleaded. Smith v. Smith, 4 Paige, 432. These people, married now 19 years, have two minor children, of whom the custody and control the father still intrusts to the mother. Thus, by the most emphatic demonstration, he avows that he does not deem her society hurtful to his offspring, as by his continued connection he shows that he does not consider her an unworthy companion for himself. Should she be discarded, and cast penniless upon the world, her ruin would be inevitable and complete. In the interest, therefore, of the parties concerned, and of the state, which cherishes the stability of the marriage relation, I am happy to find legal ground for denying the divorce.

Judgment for defendant, with costs.