SARAH A. GRIFFITH, APPELLEE, V. WILLIAM E. GRIFFITH, APPELLANT.

FILED SEPTEMBER 22, 1906. No. 14,417.

1. **Divorce:** EVIDENCE. Continued threats of personal violence indulged in by a husband toward his wife, and accusations of crime and the use of profane language, such as is described in the opinion, *held* sufficient to support the wife's petition for a divorce on the grounds of cruelty.

2. The condonation of a wife's wrongs, not subsequently repeated, will bar the husband from obtaining a divorce therefor.

APPEAL from the district court for Richardson county: ALBERT H. BABCOCK, JUDGE. *Affirmed.*

*Reavis & Reavis,* for appellant.

*Francis Martin, contra.*

EPPERSON, C.

The plaintiff, Sarah A. Griffith, brought this action in the district court for Richardson county to obtain a divorce from her husband, William E. Griffith, alleging as a ground therefor that defendant had been guilty of extreme cruelty toward her. Defendant answered, denied the acts of cruelty, and by way of cross-petition alleged that plaintiff had been guilty of adultery on several occasions, and prayed for a divorce on that ground. The lower

court found for the plaintiff, entered a decree of divorce as prayed in the petition, and dismissed defendant's cross-bill, and allowed the plaintiff alimony which, if she is entitled to recover, is conceded to be reasonable. Defendant appeals to this court and contends:  (1) That the decree in plaintiff's favor is not sustained by the evidence; (2) that the proof conclusively shows that plaintiff was guilty of infidelity as alleged in the cross-petition.

1. The evidence offered in support of plaintiff's petition was to the effect that defendant often cursed plaintiff, frequently came home intoxicated, and by insinuative and profane language accused her of having wrongfully entertained men at their home during his absence; that he often told her he did not care for her, threatened to break her head open, and made other threats of personal violence; accused her of having a bad disease; that he did nothing toward making her life enjoyable.  Such it appears has been his conduct to a greater or less extent since their marriage in 1888, increasing, as time advanced, in the display of anger, jealousy and making of threats, until the plaintiff, through fear of her husband, left his home, and soon thereafter instituted this suit.  This evidence is denied by the defendant; but plaintiff's testimony was corroborated, and we consider that the proof supported plaintiff's petition, and showed that the conduct of defendant was so abusive that the legitimate ends and objects of matrimony were destroyed, and that the decree of the trial court should be affirmed, unless the proof discloses that plaintiff committed adultery as alleged in the cross-petition, and that such acts, if proven, were not connived at or condoned by the defendant.

2. Defendant introduced testimony which he claims was sufficient proof of plaintiff's guilt on at least three occasions with three different men.  Counsel for defendant cannot successfully contend, in view of the denial of the wife and the finding of the district court on conflicting evidence, that the proof conclusively shows that plaintiff was guilty of adultery with two of these parties.  It is,

however, earnestly contended that the evidence proves the charge made against the plaintiff and one Hammontree, and that the judgment below should, therefore, be reversed, and a decree of divorce ordered for defendant. Hammontree was unmarried and about 22 years of age. In the summer and fall of 1902 he was employed by Griffith as a farm hand, and during that time lived with defendant and his wife on their farm in Richardson county. There was a letter introduced in evidence, written by plaintiff in June, 1903, addressed to Hammontree, who then lived in Missouri, containing many affectionate terms, and lascivious throughout. The general import of it is so vile that this opinion will not be polluted with its reproduction, and yet in this letter there is no direct reference to any former illicit relations between the parties, but by insinuation we must reach the conclusion, either that illicit relations had been sustained during the time Hammontree was residing with defendant's family, or that plaintiff desired to inform Hammontree of her lascivious disposition that he might be induced to return to the employ of the plaintiff's husband. The evidence at least showed a disposition on the part of the plaintiff to commit adultery, and further, that such was her disposition when her alleged paramour was residing in the family. The proof discloses that at such time, and during the absence of the husband, the opportunity existed for such illicit relations, but the credible evidence falls short of showing a disposition on the part of young Hammontree to indulge in such relations. We consider it unnecessary, in our view of the case, to determine whether or not the defendant's charge of adultery is true. If true, then by his own conduct he condoned the offense. He testified that at one time he discovered his wife and Hammontree in a position which would be sufficient to convince a husband of ordinary intelligence that his wife and Hammontree were sustaining improper relations. He also testified to compromising circumstances in her conduct toward other men, and these facts, he testified, convinced him at the time that his wife

had been guilty of adultery with these different men, but it seems that the defendant attached but litle importance to these matters. He says: "Q. You felt in your soul that she was guilty? A. Yes, sir. Q. Yet you continued to live with her as your wife? A., Yes, sir. Q. You didn't think it amounted to much or made much difference if she was unfaithful to you, did you? A. I suppose those things ought to be overlooked * * * Q. You were perfectly willing to overlook all those things and take her back to your bosom again, wasn't you? A. Yes, sir." The evidence further shows, and it is admitted by defendant, that several months prior to the separation of these parties the defendant desired to employ an unmarried man to do farm work and to bring him to their home; that the plaintiff positively refused to cook for an unmarried man, giving as her reason that her husband was always suspicious of single men and made false accusations against her. On one occasion, after defendant had seen conduct which he now says convinced him of his wife's infidelity in her relations with an employee, he continued the employment and permitted the young man to remain, as before, a member of the family. Thus we find that the husband, believing his wife unfaithful, continued the relationship of husband and wife, and permitted the man whom he believed to be his wife's paramour to remain in his household where there were many opportunities for illicit relations. He further testified: "Q. You were willing to overlook the things you complain of now if she only would be good in the future, is that it? A. Yes, sir." The evidence fails to disclose that after such condonation his wife continued to be unfaithful. The marriage relations were continued. Having thus condoned his wife's transgressions, the defendant is not in a position to now obtain a divorce for these reasons. As was said by Parsons, C. J., in (*anonymous*) 6 Mass. *147 (quoted in 2 Bishop, Marriage, Divorce and Separation, sec 285) : "It would be injustice to the wife, and immoral in the husband, to claim and enjoy, as his peculiar marital rights, the society of his wife, after a

knowledge of her offense, and afterwards to cast her off for that same offense." The condonation established the marital relations existing between the parties, restoring to the erring wife all rights to the respect and protection of the husband, the same as it was prior to the commission of the wrong; and, unless wrongs of the same nature are again committed, the condonation will operate to bar the husband from alleging them against her.

Plaintiff herein did not plead condonation, nor did she offer evidence to prove it. The absence of such a plea on her part, however, does not prevent the court from considering the same. It appeared from the defendant's own testimony that, were these charges of infidelity true, he had condoned them, and under such circumstances the court will of its own motion consider such facts in its decision of the case. In 2 Bishop, Marriage, Divorce and Separation, sec. 631, it is said: "By reason of the suit being triangular, and the public being a party to it, a fact of condonation appearing is fatal to the plaintiff's claim, though the defendant has not pleaded it; not because the latter has any just right to take the objection, but because public policy does not permit the divorce. And the public, which does not plead, objects through the conscience of the judge. Chancellor Walworth went so far as to say that if there is reason to believe this defense exists, the court, *ex officio*, may at any time before a final decree direct an inquiry to ascertain the fact." Nor does the husband's condonation exempt him from liability in an action for divorce founded on his own wrongs. It is not the sense of this opinion to approve in any way the deplorable conduct of the wife shown by the evidence, but a court of justice cannot refuse relief to one simply because the evidence raises a strong presumption, or even proves, that such an one formerly indulged in sin and crime.

We are of opinion that the defendant is in no position to urge to a court of equity the infidelity of the plaintiff, and we recommend that the judgment of the district court be affirmed.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.