## SMITH v. SMITH. (No. 6311.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 31, 1919. Rehearing Denied Feb. 25, 1920.)

1. DIVORCE ☞45—REFUSED FOR ADULTERY BROUGHT ABOUT BY HUSBAND'S DETECTIVE.

When a husband informs a private detective of his suspicions regarding his' wife and employs the detective to get evidence of the wife's adultery, a divorce will not be granted on account of adultery brought about by the detective, whether committed with the detective or another.

2. DIVORCE ☞108, 141 — REFUSED WHERE CONNIVANCE IN ADULTERY SHOWN BUT NOT PLEADED.

While plaintiff husband's connivance in his wife's adultery is an affirmative defense in so far as it is unnecessary for plaintiff to negative connivance, and defendant cannot introduce evidence thereof unless the issue is made by the pleadings, yet when the evidence shows connivance a divorce will be denied.

3. DIVORCE ☞162—REFUSAL NOT ERROR BECAUSE EVIDENCE UNSUPPORTED BY PLEADINGS.

In divorce actions the courts will not quibble as to whether' evidence showing plaintiff not entitled to divorce is supported by the pleadings.

4. DIVORCE ☞149 — VERDICT MERELY ADVISORY.

Where a jury is demanded in a divorce case there must be a verdict affirming the material facts alleged in the petition; but the court does not proceed upon the verdict, for his own judgment must be satisfied.

5. DIVORCE ☞179 — REQUESTED SPECIAL CHARGE THAT EVIDENCE WAS INSUFFICIENT ON ISSUE IS SUBSTANTIAL OBJECTION TO SUCH SUBMISSION.

In a divorce case, defendant's requested special charge that the evidence was insufficient to .establish plaintiff's allegation of adultery shows a substantial objection to such submission at the proper time, although the method adopted was perhaps not strictly in accord with the rules.

6. DIVORCE ☞51—CRUEL TREATMENT PRIOR TO CONDONATION MAY BE CONSIDERED WHERE THERE WAS SUBSEQUENT CRUEL TREATMENT.

In a divorce case, cruel treatment committed prior to the time plaintiff husband condoned his wife's misconduct may be considered, where the evidence is conflicting as to whether there was cruel treatment subsequent to such condonation.

Error from District Court, Bexar County; W. S. Anderson, Judge.

Divorce suit by Charles C. Smith against Lena Lucius Smith. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

See, also, 209 S. W. 682.

Alex C. Bullitt and Chambers & Watson, all of San Antonio, for plaintiff in error.

Leonard Brown and J. Ed. Wilkins, both of San Antonio, for defendant in error.

MOURSUND, J. This is a suit for divorce by Chas. C. Smith, alleging adultery and cruel treatment. While various acts of improper conduct are specifically alleged, the allegations specifying acts of adultery charge that on or about November 15, 1917, defendant committed adultery with a man named Len Walden, and that on or about May 25, 1918, she committed adultery with Nathan Zellinger.

The answer to the merits consisted only of a general denial. By the general charge the court submitted only the issue of cruel treatment, but at plaintiff's request also submitted the issue of adultery. The jury returned a general verdict in favor of plaintiff, and judgment was rendered granting the divorce.

The contention is made that there is not sufficient evidence to support the verdict, and that the court should have given a special charge requested by defendant instructing the jury that the evidence was insufficient to show adultery.

There was no evidence to sustain the allegation of adultery with Len Walden, unless it can be said to be sustained by the testimony of plaintiff to the effect that Mr. Long, a detective whom he had employed, stated to him: "Mr. Smith, we have got the dope on that woman; Len Walden has been living with her three weeks." Long was upon the stand and was not asked whether he made such statement, nor to state whether he knew of any facts tending to show adultery on the part of defendant. Such testimony as he gave was antagonistic to plaintiff. It cannot be contended that the evidence shows adultery with Walden, nor does appellee so contend in his brief.

The allegation of adultery with Zellinger is supported by said Zellinger's testimony alone. He was an employé of Shoaf, who operated a private detective agency, and who had been employed by plaintiff to watch Mrs. Smith for the purpose of procuring evidence showing her to be guilty of adultery. This testimony, being that of a particeps criminis and a private detective employed by plaintiff, is condemned as very weak by all authorities. Simons v. Simons, 13 Tex. 473; Oster v. Oster, 130 S. W. 265; 14 Cyc. 697; 9 R. C. L. pp. 331, 332, §§ 110, 111; Taft v. Taft, 80 Vt. 256, 67 Atl. 703, 130 Am. St. Rep. 984, 12 Ann. Cas. 959 and notes. In this connection we call attention to the fact, deemed important in adjudicated cases, that there is no evidence showing that the compensation of Zellinger or Shoaf was not dependent on the successful effect of the evidence obtained by them. There is no evidence which directly

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

corroborates said Zellinger. The only evidence tending to show that his testimony might be true is that relating to defendant's general conduct and statements, which, if true, shows her to have no regard for the sanctity of the marriage relation and to be willing, not only to permit improper familiarities, but even to commit adultery. There is evidence, other than that of defendant, which tends to show that Zellinger's testimony is untrue, but some of the witnesses appear to testify that he left defendant's house at a certain time without being in position to know whether he had gone.

The plaintiff in error invokes the rule applied in the English case of Gower v. Gower, L. R. 2 P. 428, 41 L. J. P. & M. 49, 27 L. T. Rep. (N. S.) 43, 20 Wkly. Rep. 889. In speaking of this rule, Mr. Nelson, in his work on Divorce and Separation, in section 484, says:

"If the husband employs a detective to procure evidence, and this agent entices the wife and her paramour to a public house, encourages them to get drunk and to retire together, and thus induces them to commit adultery, the husband cannot obtain a decree, although he may not have directed or authorized his agent to bring such adultery about. The husband cannot succeed, although the fraud of his agent was unauthorized. He did not 'warn him not to do what a man of his class and character would be likely to do. The very first thing that would occur to such a man, if evidence was not forthcoming, would be to make an occasion to furnish that evidence. In that point of view the petitioner is responsible for the act of his agent.' It seems clear that if the husband cannot manufacture the evidence a court should not permit an agent to manufacture the evidence for him. The reasoning of the court is not altogether satisfactory; yet it would be against public policy to permit divorce upon evidence obtained in this manner. This would encourage the commission of adultery. If the husband is surprised and wronged by his agent, as in this case, public policy, which is superior to the rights of the parties, should prevent the court from granting relief."

In 9 R. C. L. p. 394, the doctrine is stated as follows:

"If a husband employs another to watch his wife and secure evidence of her adultery to enable him to procure a divorce, and such person aids, assists, and connives at the wife's adultery, this is deemed the connivance of the husband so far as it affects his right to a divorce. So, where a wife sought a divorce for the adultery of her husband, it has been held that a finding that the act was brought about by her, acting through her attorneys or agents, is not erroneous as a matter of law, although she did not specifically direct, or have actual personal knowledge of, the efforts of her general agents, in her behalf, to entrap her husband into such an act with a lewd woman employed by them for that purpose."

In the note to Noyes v. Noyes, 10 Ann. Cas. 818, we find the following statement:

"The reported case is in accord with the weight of authority in holding that a complainant in a bill for a divorce on the ground of adultery is not entitled to a decree, where it appears that he employed an agent to procure evidence against the respondent, and that through his agent the adultery complained of was committed. Picken v. Picken, 34 L. J. P. 22; Bell v. Bell, 58 L. J. P. 54; Sugg v. Sugg, 31 L. J. Mat. 41; Gower v. Gower, L. R. 2 P. & D. 428; Dennis v. Dennis, 68 Conn. 186, 36 Atl. 34 [34 L. R. A. 449, 57 Am. St. Rep. 95]; May v. May, 108 Iowa, 1, 78 N. W. 703 [75 Am. St. Rep. 202]; Torlotting v. Torlotting, 82 Mo. App. 192; Woodward v. Woodward, 41 N. J. Eq. 229, 4 Atl. 424; Cane v. Cane, 39 N. J. Eq. 148; Hedden v. Hedden, 21 N. J. Eq. 61; Karger v. Karger, 19 Misc. Rep. 236, 44 N. Y. Supp. 219; Armstrong v. Armstrong, 45 Misc. Rep. 260, 92 N. Y. Supp. 165; Yocum v. Yocum, 3 Pa. Dist. R. 615. But in Tuck v. Tuck, 117 App. Div. 421, 102 N. Y. Supp. 688, wherein the defendant's own evidence showed that he had committed adultery deliberately and intentionally, and there was no evidence showing that the plaintiff had employed the detective (who had accompanied the defendant to a house of prostitution) to aid or connive at the commission of the offense, or that she ever had any knowledge that he had done so, or that either she or her attorney was in any way responsible for his acts, the court granted the plaintiff a divorce."

Many of the cases cited by the editor of such note do not involve the decision of the question, the facts being materially different; but there seems to be a general recognition of the correctness of the rule, at least as applied to the husband.

In the note to said case of Noyes v. Noyes, 120 Am. St. Rep. 524, the editor concludes that the doctrine of implied connivance applied in the case of Gower v. Gower has not been carried as far in this country as in England. This conclusion is based upon the decision in the case of Tuck v. Tuck, 117 App. Div. 421, 102 N. Y. Supp. 688, which is the same case relied upon by the editor of Am. & Eng. Ann. cases to support the theory that, in harmony with the general rule of favoring the wife because of her dependent condition and lack of opportunity in determining what acts would constitute connivance on her part, the court did not strictly apply the doctrine of the Gower Case. If the decision in the case of Tuck v. Tuck can in any just sense be considered a modification of the doctrine of the Gower Case, it must be admitted that such modification was justified by the facts of the case.

The rule in effect charges the husband with responsibility for the character of the man he employs to obtain evidence of adultery. It tells him that while he may employ a detective to watch his wife for the purpose of obtaining evidence he must see that his agent does not bring about an act of adultery with himself or another. What is not permissible as to the agent would not be permis-

sible as to a subagent. The rule appears to be based upon public policy and to furnish an exception to the general rule that mere negligence, will not suffice to show connivance, but that there must be an intention on the part of the husband that his wife should commit adultery. It appears to have met with the approval of all courts and text-writers, at least we have been unable to find any criticism thereof.

[1] In this case it appears that the plaintiff, according to his testimony, had received information which led him to believe and charge that the detective Walden, also employed to watch defendant, had committed adultery with her. He testified that he employed Shoaf after Long "double-crossed" him. Walden worked for the Long Detective Agency. So it appears that after some disagreement arose between Long and plaintiff the latter resorted to another detective agency for the purpose of procuring evidence against defendant. The terms and instructions relative to the employment are not disclosed. No inquiry appears to have been made as to the character of the persons who were to do the watching. There are no circumstances which would justify any modification of the rule applied in the Gower Case. However, we are not disposed to modify it in any case in which the husband employs private detectives to procure evidence of adultery on the part of the wife. It will prevent crime and bad morals if it be understood that, whenever a husband informs a private detective of his suspicions and employs him to get evidence of adultery, he cannot get a divorce on account of adultery brought about by such detective, whether committed by the detective or another.

[2-4] We do not overlook the fact that connivance was not pleaded as a defense, and that it is classified by law-writers as an affirmative defense. This is correct, at least in so far as that it is unnecessary for a plaintiff to negative connivance, and that for a defendant to be entitled to introduce evidence an issue warranting it should be made by pleading. However, when the evidence introduced shows connivance or collusion the court is entirely justified in refusing a divorce, and in fact should do so. If it be not clearly disclosed, but indicated, the court, in justice to plaintiff, should give him an opportunity to explain his conduct. Nelson on Divorce & Separation, § 488; 9 R. C. L. 9, p. 386; Smith v. Smith, 4 Paige, 432, 27 Am. Dec. 75; Karger v. Karger, 19 Misc. Rep. 236, 44 N. Y. Supp. 219; Breedlove v. Breedlove, 27 Ind. App. 560, 61 N. E. 797; Griffith v. Griffith, 77 Neb. 180, 108 N. W. 981; Bordeaux v. Bordeaux, 32 Mont. 159, 80 Pac. 6; Hunter v. Hunter, 132 Cal. 473, 64 Pac. 772; Todd v. Todd (N. J. Ch.) 37 Atl. 766. The principle upon which these holdings are based is that the

public is a party to a divorce action and as such interested in defeating the divorce where plaintiff is not entitled to it. It cannot be doubted that in this state the courts will not quibble in a divorce suit concerning whether evidence which shows plaintiff is not entitled to a divorce is supported by pleadings. The evidence is required to be full and satisfactory. If a jury is demanded, there must be a verdict "affirming the material facts alleged in the petition." Then the court does not proceed upon the verdict, but his own judgment must be satisfied. Upon appeal this court has not hesitated to set aside decrees of divorce when it did not find the evidence to be full and satisfactory. Lohmuller v. Lohmuller, 135 S. W. 751; De Fierros v. Fierros, 154 S. W. 1067.

It has been urged that there is circumstantial evidence sufficient to show the adultery of the defendant with another or others than those named. While there is much testimony tending to show suspicious circumstances, much of it is contradicted. Defendant's conduct on the night of February 13, 1918, as detailed by the witnesses Shoaf and Tuten, certainly looks bad, but it is not alleged that she committed adultery upon that occasion, and perhaps for that reason counsel for her did not call upon her to offer any explanation.

[5] In view of the fact that there was no averment of adultery with another than the detective employed by plaintiff which received support in the evidence, the court was not justified in submitting the issue of adultery. The method adopted in trying to prevent such issue from going to the jury was perhaps not strictly in accord with our rules, but nevertheless it shows a substantial objection to such submission presented at the proper time. In view of the fact that the jury probably based its verdict upon a finding that adultery had been committed, the judgment must be reversed.

[6] Appellant complains of the refusal to give an instruction not to consider any act committed prior to the last time plaintiff cohabited with defendant. The court did not err in refusing to give such charge. There was evidence of subsequent cruel treatment, and the charge would have had the same effect as one instructing the jury that defendant's testimony was true in so far as she denied any subsequent cruel treatment, and that prior cruel treatment would not justify a finding for plaintiff. The law is that if there be subsequent cruel treatment the jury and court may consider the acts occurring prior to cohabitation. Jones v. Jones, 60 Tex. 451; Oster v. Oster, 130 S. W. 265; Parker v. Parker, 204 S. W. 493. This being the case, no charge should be given which instructs the jury not to consider prior cruel treatment when the evidence is conflicting as

to whether there was subsequent cruel treatment.

The judgment is reversed, and the cause remanded.

---

⊚═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes