## WILLIAM E. MYERS *vs.* ELEANOR MYERS.

Proof of adultery, alone, is not sufficient to authorize a judgment of divorce. It must be averred in the complaint that the adultery charged was committed without the consent, connivance, *privity* or procurement of the plaintiff; and the complaint must be verified by the oath of the plaintiff.

Where a plaintiff, in his complaint, alleged that five years had not elapsed " since he discovered the fact that such adultery had been committed by the defendant without his consent, connivance or procurement ;" *Held* that this averment was not a compliance with the above rule.

Upon a reference, in an action for a divorce, it is the duty of the referee to find not only as to the fact of adultery, but also as to all other material facts, such as connivance of the plaintiff, &c.

No one has a right to relief from a court for an injury which he was himself chiefly instrumental in effecting. Upon this principle, connivance by a plaintiff at the adultery of the defendant, destroys all claim to remedy by way of divorce, though the adultery be proved.

Circumstances considered as amounting to proof of the plaintiff's consent to, privity with, and connivance at, the adultery of the defendant.

THIS is an action for a divorce. There are two counts in the complaint. *First.* That the contract of marriage was made on the 20th August, 1860, while the plaintiff was under duress of imprisonment; and *Second.* For adultery of the defendant, committed 16th January, 1862. Issue was joined by a denial of the allegations in the complaint, not under oath. A referee was appointed to take the evidence, and to report the same with his opinion ; and the case came before the court upon the evidence, and the report of the referee.

Myers *v.* Myers.

*McIntyre Frasier,* for the plaintiff.

*A. H. Ayers,* for the defendant.

POTTER, J.   No objection was raised to the complaint for multifariousness : and no evidence was taken under that count. We may regard it here as abandoned.   Though the referee reports that the marriage was voluntarily entered into on the part of the plaintiff, and not by compulsion or threats ; and that at the time of the marriage the plaintiff was under arrest on a warrant issued on the application of the superintendents of the poor of Montgomery county, as being the putative father of a bastard child, of which the defendant was then pregnant.   The referee also reports, as his opinion, that the defendant has committed the adultery charged in the complaint, with one Charles Wood.

From the evidence it appears that the marriage was consummated no further than by the usual marriage ceremony, and not by subsequent cohabitation ; the parties never having lived together, but separated at the time of the ceremony, and remained separate, and resided, the plaintiff at Amsterdam, and other places, and the defendant at Fort Plain, 25 or 30 miles distant, ever since the ceremony.

I should have serious doubts whether, upon the evidence as reported, I could bring myself to the same conclusion as did the referee, on the question of adultery, under all the circumstances of the case.   If she is guilty, it is to be presumed from circumstances all transpiring on one occasion entirely disconnected with the usual and ordinary accompaniments of this offense, of friendship, intimacies, repeated instances of imprudent behavior, lewd conduct, &c.   Presumptions based upon uniformity of, or continued improprieties, and suspicious intimacies with one individual, are much stronger than the presumption arising from a single circumstance unaccompanied by previous or subsequent impropriety of conduct.   Excluding the fact of pregnancy prior to the

defendant's marriage, which is to be regarded as legally cured by the marriage, the case is left uncorroborated by the usual evidences; nor, except on one occasion, are there any strong circumstances from which to presume adultery against the defendant. She stands then, as to her guilt or innocence, with strong presumptions against her *only* in one case, and on one occasion, weighing against otherwise a fair reputation; and her positive oath of innocence. Nor this alone; it also appears in the evidence that she by her counsel attempted to secure the attendance as a witness of Charles Wood, the individual with whom the adultery is charged to have been committed, and that her counsel was entirely unable to secure his attendance, or to find him at Syracuse, his last known place of residence; but her counsel found upon inquiry that the plaintiff's father, who resides at Amsterdam, Montgomery county, had been at Syracuse a day or two previous; had seen and talked with Wood the witness; that they had gone off together, and Wood had not been heard of afterwards; and the father of Wood, of whom information was sought, told the defendant's attorney that Wood the witness had promised the father of the plaintiff that he would not be at the said hearing as a witness on said adjourned day. As the plaintiff's father had been a witness himself on the former hearing, for his son, and had testified to the fact that his son, the plaintiff, resided with him at Amsterdam, and that he, the father, had seen his son and Wood together at Amsterdam about the time of the alleged adultery; and as from this relationship and knowledge he may be presumed to know the importance of Wood's testimony, he may also be presumed to know that if the charge of adultery was true, and without any connivance, the testimony of Wood would not injure the plaintiff; but if untrue, or, if Wood's conduct was part of a scheme of conspiracy against the defendant, that it was necessary to keep him away. Added to the fact of relationship, intimacy, and knowledge of the plaintiff's father, the circumstances are sufficient to justify a suspicion of combination and fraud in

this regard, and the testimony for this purpose was admissible; and in this view, the circumstance has great significance, but it adds nothing in favor of the presumption of the defendant's guilt, but the contrary.

But in the light in which I look at this case, the plaintiff has failed to make out his case, even conceding the opinion of the referee on the question of adultery could be sustained by evidence. Proof of adultery alone is not sufficient to authorize a judgment of divorce. The 86th rule of this court, which has ever been a part of the law of divorce in this state, and I believe also in England, provides, " that in actions of divorce on the ground of adultery, unless it be averred in the complaint that the adultery charged was committed without the *consent, connivance, privity* or procurement of the plaintiff, &c.; and the complaint containing such averment be verified by the oath of the plaintiff, &c. judgment shall not be rendered for. the relief demanded, until the plaintiff's affidavit be produced, stating the above facts." To this effect is 2 *R. S.* 145, § 55, [42,] *sub.* 1. The plaintiff has produced no such affidavit, and he has not averred any such fact in his verified complaint. There is a statement in the complaint, which it is claimed was intended for that purpose, but which cannot be admitted to be sufficient. The statement in the complaint is in the following language: "*that five years have not elapsed since he discovered the fact that such adultery had been committed by the defendant without his consent, connivance or procurement.*" To say nothing of the omission of the word "*privity*" contained in the rule, this statement amounts to no allegation that the adultery was committed without his " consent, connivance or procurement."

It is only an allegation that he had not *discovered* it to be so. Very likely! Perhaps he never will discover it to be "without his consent, connivance or procurement." If he had consented, connived at, or procured the adultery to be committed, he could have taken, with truth, this very affidavit; that it was not five years since he discovered it. That

is all the verification amounts to.  But assuming that this statement was not designed as an evasion, but was inserted by unskillfulness or ignorance, the referee has also been as careful to omit the expression of an opinion on that important feature of the case as the plaintiff, and if we look into the evidence in the case, we shall see he could have expressed no opinion that would help the plaintiff in that particular.  The authorities are, that where references in such cases are directed, the referee must find not only as to the fact of adultery, but also as to all other material facts.  (*Dodge* v. *Dodge*, 7 *Paige*, 589.  *Arborgast* v. *Arborgast*, 8 *How. Pr. Rep.* 297.)  This, in the law of divorce, is a material fact to be found. In the examination that I have given to the case, it appears to me that not only is there the absence of evidence on the part of the plaintiff to show a negative of consent, privity, connivance and procurement of the adultery, if it was committed; but I think that by the evidence he has established a clear case to the contrary; that the evidence shows a very bungling attempt to secure through the means of his consent, privity and connivance, and through the forms of law, a separation of himself from the relation of a husband.

The case shows that ever since his marriage, in August, 1860, the plaintiff has abandoned his wife, and left her upon the world without his help, to provide for herself, and her and his own offspring.  This is a sufficient indication of his wish to live separate from her; or in other words, to be rid of her as a wife.  They resided in the same county, some 25 miles distant from each other.  There is no evidence of the intercourse between them from the time of marriage, even of a visit or a letter, prior to the 14th January, 1862.  Just prior to that day, one Charles Wood, then of Herkimer county, an intimate friend of the plaintiff, who had known him while they resided together at Fort Plain, was at the plaintiff's residence at Amsterdam.  It was proved that Wood and the plaintiff left Amsterdam together on the 14th of January; that both were together at Fort Plain, the

place of the residence of the defendant. The plaintiff went to the house of a relation in that village; Wood came to that house while the plaintiff was there; they went aside and talked together; and left together; but by different doors of the house. The plaintiff told his relative that he was going west that evening on the cars, and that the defendant was coming up the next morning; "it is all right," said he; "I am going on the cars this evening, and she is coming up in the morning." That afternoon, Wood, who then resided at Frankfort, Herkimer county, called on the defendant and told her that he had received a letter from the plaintiff who wanted him, Wood, to let him have money, so that he could get a bill of divorce from her; and he, Wood, wanted her to come up to Frankfort, the next morning, and he would show her this letter; and he left her a dollar to pay the fare. She went the next day at noon, by the train, and arrived at Frankfort in the afternoon, where she met Wood, at the depot. She went to a hotel, and staid till time for the train east at 5 P. M., but Wood showed her no letter from the plaintiff. Wood then got a cutter, under pretense of taking her to the depot, but drove in another direction three miles, to a hotel, at Columbian Springs. She interposed objections to this. Wood said there was a train down at 10 o'clock, and he was going to this place to get supper. She told him she had a nursing baby, 10 months old, and must go home. When they got to this hotel, Wood told her there was no train that night; that they would have to stay all night, and that he would pass her off as his sister. They roomed together, though she denies criminal intercourse; says she sat on a lounge all night; and that Wood lay down on a bed. This may or may not be true; it is not contradicted. That same night, after they had retired, the plaintiff, by a remarkable coincidence, arrived at the hotel, and inquired about them. He told the landlord that the woman was his wife; and asked the landlord to enter that fact, with the date, on his book, so that he could use him as a witness. The plain-

tiff staid, without being seen by his wife and Wood, till they were at breakfast, when the plaintiff peaked into a partly opened door; saw them at breakfast, and then departed. This night is the time when the adultery in the complaint is charged to have been committed. The evidence, unexplained, might prove it. But if true, connivance destroys the effect. Connivance destroys all claim to remedy by way of divorce; and is founded on the obvious principle that no man has a right to relief from a court for an injury which he was chiefly instrumental in effecting, himself. (*Shelf. on Marriage and Divorce,* 449.) "Bills have frequently been dismissed on this ground, where adultery has been fully proved. (*Timmings* v. *Timmings,* 3 *Hagg. Eccl. Rep.* 76.) A man must come with pure hands himself, in this respect, before he can exact due purity on the part of his wife. The evidence to prove connivance is generally circumstantial. There were circumstances in this case that required explanation; none was given; it was in the plaintiff's power to give it. For what did he and his intimate friend Wood, leave Amsterdam together? For what did they again appear in private consultation in Fort Plain? How did he know the defendant was going the next day on the cars? How did he know where his friend Wood, and his wife, were to be the next night? Why was not Wood a witness? This is too transparent a fraud, I think, in all its features, to be seriously presented to a court for their sanction. It would be a poor compliment to the intelligence or to the judgment of a judicial tribunal, to suppose it could adopt this state of facts, and give a judgment in favor of the claim as being consistent with honesty and fair dealing. A court would be unworthy of its position if its perceptions were so dull as not to perceive, or so indifferent as to wink at, such an attempt upon a weak, perhaps erring woman. The case may not be as bad as it seems; but it appears to me to be a most bungling, not to say a wicked conspiracy and connivance. The bill must be dismissed with costs.

[SCHENECTADY SPECIAL TERM, July 6, 1863. *Potter,* Justice.]