[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case revolves around Article V in the last will and testament of Elaine Fraser Sutton. In Article V, the decedent bequeathed property and assets to her children, including "Philip Douglas Meade. . .if he is divorced or widowed from Priscilla D. Meade. . ." The plaintiffs contend that this article contravenes public policy and, therefore, is invalid. The defendants disagree.
In Daboll v. Moon, 88 Conn. 387 (1914) the Connecticut Supreme Court held valid a similar will, rejecting the argument that such a condition would induce a married person to separate or obtain a divorce from his spouse. The will there in issue provided that the decedent's son would receive a bequest "[u]pon the death of the present wife, or if he shall obtain a divorce from her. . .or if. . .he shall become married to a good respectable woman." Id. at 388.
In rationalizing its decision, the Daboll court stated that:
 It has never been the policy of this State, as it formerly was the policy of the church, to compel people married to each other to continue for life in that relation and cohabit together regardless of the inaptitude for such cohabitation and however unfitted they may be in disposition and temperament to mutually perform the duties of the marriage relation. The State does not favor divorces, but it allows them for several causes, because it believes that the interests of society will thereby be better served and that its own prosperity will thereby be promoted. Dennis v. Dennis, 68 Conn. 186, 197, 36 A. 34. So, too, the State deems it to be in the public interest that husband and wife, in some cases, shall live separate and apart, although not divorced.
Id. at 391. The Court believed such a restrictive condition could be construed to uphold state legislation affecting marriage, for example, laws making it a criminal offense to marry an epileptic, imbecile, or feeble-minded person. Id. at 391-92.
 To condition a gift upon the doing of what the State treats by its legislation as promotive of CT Page 6555 the public interest and its own prosperity, or what it requires to be done in the interest of the public health, cannot be against public policy. To make the condition void as against public policy, it must appear from the language of the will alone, or in connection with extrinsic facts, that the testator in the particular case in question conditioned his gift upon an illegal divorce or separation.
Id. at 392. The court also reasoned that such conditions are valid when a legal divorce or separation has been obtained, is intended or is pending, and if the condition may be legally performed. Id. The court refused to presume that the condition was intended to induce the beneficiary to seek a divorce. Id. at 393.
In Knox v. Estate of Fredette, 35 Conn. Sup. 34 (1978). The superior court (Saden, J.) upheld a will provision distributing the subject estate "to Howard, or to Howard and John equally `if on the date of distribution. . .it appears that . . .John. . . is no longer living with or supporting his wife.'" Id. at 35. The facts indicate, however, that John and his wife had had marital difficulties and were separated. Id. at 37. Thus, it appears that the decedent, in drafting her will, was anticipating John's divorce and acted to keep the bequest out of the marital estate.
The present case may be distinguished from both Daboll and Knox. The provision at issue in Daboll was neutral regarding the disparaged spouse, although the phrase allowing the transfer if the beneficiary were to marry "a good respectable woman," id. at 389, could be read as a vituperative reflection on the current spouse. More to the point, however, was the court's construing of the contested provision against the prevailing statutory framework, which greatly circumscribed the act of marriage. Id. at 391-92. Also, the court defined public policy by whether the will violated any specific laws.
In Knox, the court noted that extrinsic facts adduced at the de novo hearing supported the restrictive condition at issue. Specifically, the beneficiary and his wife had a rocky marriage and the testator seemed to be anticipating a divorce.
The current case differs from Daboll in that there are no negative references, either direct or implied, to the disfavored wife. In his memorandum in opposition, the plaintiff argues, and the defendant fails to dispute, that the decedent prior to her death had lived with the plaintiff, whose wife had been the one to care for the decedent for an extended period of time just CT Page 6556 prior to her death. The present case differs from Knox as well in that there is no indication of a pending or intended divorce. Indeed, the facts indicate quite the opposite.
Furthermore, no facts have been alleged to indicate any of the traditional justifications for such exclusionary conditions. No facts suggest, for example, that the plaintiff depends on his wife for his income, and that the conditioned bequest would support him should a divorce or separation deprive him of such income.
While both cases upon which the defendant's relief can be distinguished, to the extent that public policy considerations differ today than in 1914, the Daboll decision should not be dispositive.[1] The Court therein held that the provision of the will failed to contravene public policy because it violated no laws; this court is of the opinion that public policy can be interpreted more broadly; indeed, public policy can change and the law should evolve along with it. For example, this court has drawn guidance from Justice Peters' dissent in Quinnett v. Newman, 213 Conn. 343 (1990), (in which the majority held that Connecticut General Statutes 30-102, The Dram Shop Act, provides the only relief to a plaintiff injured by an intoxicated person who had been served liquor by a third person, and that there is no cause of action for negligence against a commercial vendor who serves an intoxicated person) wherein she stated:
 The hapless victim in this case was simply another statistic in a long line of similar victims, killed by a driver who, after the consumption of a great deal of liquor at a bar, crossed the median line on the highway and drove his car into oncoming traffic. Enough is enough. This court should no longer be the roadblock that prevents a jury from considering whether, as a matter of fact, a commercial vendor of alcohol has taken suitable precautions, has observed reasonable care, to avoid injury to those who are foreseeably at risk and whose injuries are in fact proximately caused by the sale of alcohol.
 The existing state of the law does not, in my view, prevent us from joining the vast majority of state and federal courts that, since 1971, have rejected or modified judicial rules that provide immunity from damages for those who furnish alcoholic beverages in circumstances that proximately cause injury to innocent third CT Page 6557 parties.
Id. at 350.
The defendants in the present case argue that Article V of the will does not violate public policy because, like the will in Daboll, it violates no laws. They also argue that "[m]any areas of our law authorize and approve divorce and separation [and that the] courts have eased the restrictions on divorce and separation since the time Daboll was decided." Defendant's Memorandum filed February 5, 1991, p. 6. Therefore, say the defendants, the public policy of Connecticut neither opposes nor discourages divorce and separation. Id. at 7. Although these assertions may be true as far as they go, the defendants have not argued, nor could they, that the law facilitates or encourages divorce between happily married couples.
This Court is of the opinion that the plaintiff's interpretation of Connecticut's public policy is the better reasoned view. In his memorandum in opposition, the plaintiff argues that "[o]ur legislature, in enacting a number of statutes regarding the family relationship, has demonstrated clearly and unequivocally a policy in favor of sustaining the marital relationship." Memorandum In Opposition, filed March 15, 1991, p. 7. (Emphasis added). The plaintiff cited, for example, Connecticut General Statutes 46b-67, which provides a 90-day cooling-off period; 46b-53 and 46b-10, which facilitate reconciliation; and specifically 46b-53 (b), which provides for two mandatory consultations with a family conciliator.
In determining what constitutes public policy, this Court has further looked to contract law for an analogy, an approval favored in the past. See, for example, Conference Center Ltd. v. TRC, 189 Conn. 212, 224 (1983), in which the Court applied U.C.C. principles in a real property case, noting that the U.C.C. had been analogized before in cases involving unconscionability. Id. at 225.
The United States Supreme Court has held that contracts violative of public policy are unenforceable. See e.g., Muschany v. United States, 324 U.S. 49, 67, n. 16 (1944). As stated more recently in United Paperworkers Int'l v. Misco,484 U.S. 29 (1987):
 A court's refusal to enforce an arbitrator's award under a collective-bargaining agreement because it is contrary to public policy is a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that CT Page 6558 violate law or public policy. W. R. Grace 
Co. v. Rubber Workers, 461 U.S. 757, 766
(1983); Hurd v. Hodge, 334 U.S. 24, 34-35
(1948). That doctrine derives from the basic notion that no court will lend its aid to one who founds a cause of action upon an immoral or illegal act, and is further justified by the observation that the public's interests in confining the scope of private agreements to which it is not a party will go unrepresented unless the judiciary takes account of those interests when it considers whether to enforce such agreements. E.g., McMullen v. Hoffman, 174 U.S. 639, 654-655 (1899); Twin City Pipe Line Co. v. Harding Glass Co., 283 U.S. 353, 356-358 (1931). In the common law of contracts, this doctrine has served as the foundation for occasional exercises of judicial power to abrogate private agreements.
Id. at 42.
In Fairfield Credit Corp. v. Donnelly, 158 Conn. 543
(1969), the Connecticut Supreme Court held that agreements violating the consumer-oriented policy of the Uniform Commercial Code, as adopted, were unenforceable.
 In addition, since Connecticut's adoption of the Uniform Commercial Code in 1959, it has become increasingly clear that the policy of our state is to protect purchasers of consumer goods from the impositions of overreaching sellers. For example, the General Assembly, in its February, 1965 session, passed Public Act No. 350 (now General Statutes [Rev. to 1961] 42-115c-42-115f), entitled "An Act Concerning Consumer Frauds", which makes illegal certain deceptive trade practices and empowers the department of consumer protection to enforce the act. In 1967, the General Assembly authorized the creation of a "consumers advisory council" to assist the department of consumer protection in formulating standards for consumer goods. Public Acts 1967, No. 73 (now General Statutes [Rev. to 1968] 19-170b). In that same session, an "Act Concerning Home Solicitation and Referral Sales:, outlawing the referral system employed in this very case (Public Act No. 749 [now General Statutes (Rev. to 1962) 42-134-42-143] ), and an act CT Page 6559 concerning the disclosure of finance charges (Public Act No. 758 [now General Statutes (Rev. to 1962) 36-348-36-363]) were passed, each of which was intended to provide extensive protection to the consumer. Finally, in the 1969 session of the General Assembly, no less than four acts were passed which were designed to afford protection to the consumer. Public Acts 1969, Nos. 13, 178, 325 and 454. There can be no question that there exists in Connecticut a very strong public policy in favor of protecting purchasers of consumer goods and that for a court to enforce a waiver of defense clause in a consumer-goods transaction would be contrary to that policy. See cases such as Unico v. Owen, 50 N.J. 101, 124, 232 A.2d 405; Quality Finance Co. v. Hurley, 337 Mass. 150, 154, 148 N.E.2d 385; San Francisco Securities Corporation v. Phoenix Motor Co., 25 Ariz. 531, 540, 22 P. 229.
Id . at 550-51. In finding a waiver clause violative of public policy, the Court focused not on a single section of the U.C.C., but on the perceived policy underlying the entire Code.
Such a construction is compatible by analogy with the instant plaintiff's construction of Connecticut's laws on divorce and separation. Specifically, despite statutes designed to facilitate divorce and separation for persons who choose to end their marriages, the statutory framework, considered in its entirety, seeks to promote and preserve marriage as an institution. Public policy must be ascertained through legal precedent, statutory enactments or obvious ethical or moral standards. Muschany v. United States, 324 U.S. at 66. Plaintiff's argument is directed largely to the statutory framework which quite clearly provides for a divorce but only once efforts at reconciliation have been attempted. Certainly nothing in the statutory enactments on dissolution encourage or invite destruction to the marital union. Nor can it be genuinely said that the provision for no fault divorce was designed to promote divorce. Rather, the legislature merely recognized that fault is not always an issue and that people seeking divorce should not be forced to manufacture grounds of adultery, etc. where none exist in order to obtain a divorce. See Connecticut's New Approach to Marriage Dissolution, 47 Connecticut Bar Journal, 375 (1973) C. McAnerney Schoonmaker.
In holding the will provision void, this Court follows the lead of other states that have rejected the approach espoused by Daboll. See e.g., Fleishman v. Bregel, 197A. 593, 597-98 (Md. CT Page 6560 1938); Estate of Gerbing, 337 N.E.2d 29, 33-34 (Ill. 1975); Williams v. Hurd, 258 S.W. 703, 709-710 (Mo. 1924) (rejecting Daboll by name); Graves v. First National Bank in Grand Forks,138 N.W.2d 584, 589-92 (N.D. 1965) (rejecting Daboll by name).
Based on the foregoing Article V of the will in this case is void as against public policy.
This conclusion means that the plaintiff should take the gift as if there had been no condition annexed to it or as if he had complied with the condition. Matter of Liberman 18 N.E.2d 658
(1939); Matter of Agnew, 174 N.Y.S.2d 1008 at 1011 (1957); Graves v. The First National Bank in Grand Forks, supra at 592.
The defendant argues that the entire gift to the plaintiff must lapse and pass by the residuary clause of the estate. To do this, would, in effect, give total effect to the clause which the court has just found to be null and void.
KATZ, J.