[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Introduction
This is an action commenced by the plaintiff husband on March 21, 2000 seeking a dissolution of marriage on the grounds of irretrievable breakdown. He also claims an equitable division of the real and personal property interests of the parties. On March 30, 2000, the defendant wife appeared by counsel. On February 1, 2001, the defendant filed an answer and two count cross-complaint in which she claims a dissolution of marriage on the grounds of irretrievable breakdown and habitual CT Page 6447 intemperance. She also claims alimony, attorney's fees, and an equitable distribution of the real and personal property of the parties. Trial was held on January 25, 2002. Both parties testified extensively and the court also heard testimony from Peter Yacovone, the parties' financial adviser; Julie Rozman, the parties' daughter; and Dorothy Lockheart, the defendant's sister. The court also received 28 exhibits as well as post-trial memoranda. Memoranda and proposed revised orders were filed by both parties on February 22, 2002.
Findings of Fact
From the testimony and evidence presented, and, after carefully assessing the credibility of the witnesses, the court finds the following to have been proven.
The parties were married on July 6, 1963 in Brunswick, Maine. There are no minor children issue of the marriage and no minor children have been born to the wife since the date of the marriage. The parties have two adult children. Neither the state of Connecticut nor any town thereof has contributed to the support and maintenance of either party. The plaintiff has resided continuously in this state for more than twelve months immediately prior to the date of the complaint. The court finds that it has jurisdiction over the parties and the marriage.
The husband is 61 years old. He was honorably discharged after eight years in the Navy in 1968. He went to work for Pratt Whitney for a short time and then to Sears, where he worked for ten years. Subsequently, he worked for an air conditioning company for five years. In 1984 he left that company to start his own commercial and industrial heating and ventilation business. He remained in this business with a partner until 1993 when he bought out his partner and went out on his own. In January 2000 he stopped working because he has severe degenerative arthritis in both knees. He does not plan to ever go back to work. He applied for Social Security Disability benefits which were granted effective June 2000. He received a retroactive benefit payment of $14,550 in April 2001. His monthly benefit, effective January 16, 2002, is $1,524. He will be eligible for Medicare in June 2002.
The wife is 63 years old. During the course of the marriage the parties agreed that she would not work but instead would stay at home and raise the children and maintain the household. She did not work outside the home until 1993 when she went to work for the husband's business, Northeastern Mechanical Services, doing various accounting and financial work for the company. She worked there until 2000. She is presently working for GE Financial through a temporary placement agency. She earns $10.75 per hour or approximately $430 per week for forty hours; with CT Page 6448 regular overtime of about five hours per week she earns about $510. She has some limited health insurance through the agency for which she pays $78 per month. She is in good health.
The problems in the marriage surfaced as early as shortly after the honeymoon and escalated after 1969. The parties argued and fought often. The parties attended several sessions with a marriage counselor in 1976. In the early 1980s the husband filed for divorce but withdrew it. The husband admits that his wife complained about his drinking many times beginning as early as 1969. Although he was a good provider, his drinking was a serious issue for his wife and the source of many arguments. Over the years the wife has been the victim of several violent and threatening encounters with her husband which resulted from the husband's intoxication. He claims he is not an alcoholic but admits he drinks once or twice a week and may have been intoxicated on occasion at parties. The wife claims that the husband admitted to her he was an alcoholic. She claims his drinking was an everyday occurrence. The husband attended Alcoholics Anonymous for nine months in 1997 but claims that he only went as an observer. The wife also attended Alanon for about a year in the early 1990s. On March 1, 2000 the husband left the home. He continued to pay the utilities, taxes, cable and gave his wife $125 per week for incidentals until October 2000.
After this action was brought, the husband purchased a trailer lot for $22,500. While he was subject to the automatic orders requiring him to maintain existing medical insurance as well as life insurance, he let expire a $150,000 life insurance policy on his life. In July 2001 he also canceled his private health insurance with Connecticare, which also covered his wife. There is still an outstanding balance of $926.56 due on that insurance. The husband also liquidated his business bank account which had a high balance of approximately $37,000. He has not filed a tax return for the year 2000. A fee to the accountant for preparing the parties' joint tax return for 1999 is still owing. The parties split the tax refund for that year.
During the course of the marriage the parties were able to accumulate substantial assets, chiefly from the husband's income. However the parties, throughout the marriage, viewed their roles as contributing equally to the welfare of the family. The parties own a house at 22 Hillside Drive in Ellington, Connecticut valued at $171,000 which was acquired during the marriage and is where the wife still resides. The mortgage on the property was paid off during the marriage. The husband also owns an industrial condominium at 64 Field Road in Somers which he purchased in 1988 which is valued at $57,000 as well as the trailer lot he bought for $22,500. The parties also own, either individually or jointly, several investment accounts totally approximately $163,250. CT Page 6449 During the course of the separation of the parties, prior to trial, the parties had depleted more than $35,000 of additional funds in these accounts to pay various living expenses as well as the fees of their attorneys. In addition, they own vehicles totaling approximately $48,000 and other miscellaneous personal property and business tools totaling approximately $18,500. They also own life insurance policies with a cash value of $26,084.
Discussion
The court requested that the parties address in post-trial memoranda the following: 1) habitual intemperance and its standard; 2) the ability to amend the complaint to conform to the evidence; and 3) whether, if the court does not find habitual intemperance, the court can use the evidence offered to establish that ground for other purposes.
The defendant wife claims in her cross-complaint the grounds of habitual intemperance as a basis for the court to grant a divorce. General Statutes § 46b-40 (c)(7) provides that: "A decree of dissolution of a marriage or a decree of legal separation shall be granted upon a finding that one of the following causes has occurred: (1) The marriage has broken down irretrievably; . . . (7) habitual intemperance; (8) intolerable cruelty. . . ." The case law regarding what facts the court must find in order to conclude that a divorce should be granted on the grounds of habitual intemperance are sparse. However, inDennis v. Dennis, 68 Conn. 186, 192-194 (1896), the court held that in order to establish habitual intemperance as a grounds for a divorce, it must be established that the habit' was so gross or so long continued as to produce suffering or want in the family. Excessive indulgence in alcohol is not sufficient. As the court held in Wilhelm v. Wilhelm,13 Conn. Sup. 270, 271 (1945), "[t]his indulgence, however, was not such as to cause any want to the family or suffering, except as it was reflected in the intolerable cruelty. For that reason his habitual intemperance was not such as to provide a ground for divorce independently of the intolerable cruelty. Dennis vs. Dennis, 68 Conn. 186,192; Purcell vs. Purcell, 101 id. 422." In Purcell the court held that: "The subordinate facts found as to intoxication, as set forth in the statement of facts, do not disclose that the defendant's use of intoxicants was so gross as to produce want or suffering in the family, either objective or subjective, to a degree which could not reasonably be borne, or which disqualified the defendant from attending to his business; under these circumstances, the conclusion that the subordinate facts did not establish habitual intemperance, cannot be held to be illegal or illogical. Dennis v. Dennis, 68 Conn. 192, 36 A. 34." Purcellv. Purcell, 101 Conn. 422, 425 (1924). CT Page 6450
Here, although the plaintiff husband may have indulged in persistent, and occasionally excessive, alcohol consumption during the course of this marriage, he was a good provider and his family did not want for material goods because of it. Therefore the defendant has failed to prove the grounds of habitual intemperance.
The defendant has requested leave to amend her cross-complaint post-trial pursuant to Practice Book § 10-62 to insert a third count to her cross-complaint in which she claims intolerable cruelty. That section provides: "In all cases of any material variance between allegation and proof, an amendment may be permitted at any stage of the trial. If such allegation was made without reasonable excuse, or if the adverse party was actually misled thereby to his or her prejudice in maintaining the action or defense upon the merits, or if such amendment requires postponement of the trial or additional expense to the adverse party and this is shown to the satisfaction of the judicial authority, such amendment shall be made only upon payment of costs or upon such terms as the judicial authority may deem proper; but in any other case, without costs. Immaterial variances shall be wholly disregarded."
"`[A] trial court may allow, in its discretion, an amendment to pleadings before, during, or as here, after trial to conform to the proof. Wright v. Coe Anderson, Inc., 156 Conn. 145, 155, 239 A.2d 493
(1968); Thibault v. Frechette, 135 Conn. 170, 173, 62 A.2d 863 (1948); cf. Winsor v. Hawkins, 130 Conn. 669, 670, 37 A.2d 222 (1944); General Statutes § 52-130. . . . Saphir v. Neustadt, 177 Conn. 191, 206,413 A.2d 843 (1979). Whether to allow an amendment is a matter left to the sound discretion of the trial court.'(1992).' . . . Voll v. LafayetteBank Trust Co., 223 Conn. 419, 433, 613 A, 2d 266 (1992)." RemingtonInvestments, Inc. v. National Properties, Inc., 49 Conn. App. 789, 803-04
(1998). "Much depends upon the particular circumstances of each case. The factors to be considered include unreasonable delay, fairness to the opposing parties, and negligence of the party offering the amendment.Clayton v. Clayton, 115 Conn. 683, 686, 163 A. 458; Rusch v. Cox,130 Conn. 26, 32, 31 A.2d 457." Antonofsky v. Goldberg, 144 Conn. 594,597 (1957).
Here the defendant did not seek leave to amend her cross-complaint until after the trial. The plaintiff objects to the allowance of the amendment because it raises a new cause of action not previously alleged. In exercising its discretion in determining whether the court should allow the amendment, the court is guided by the considerations referred to in Antonofsky, "unreasonable delay, fairness to the opposing parties, and negligence of the party offering the amendment. "Here the trial is over and the amendment seeks to add an entirely new ground for the dissolution of marriage to the cross-complaint, one which the CT Page 6451 defendant could have easily pleaded in her original cross-complaint, which was filed almost a year before trial. Lastly, it is not fair to the plaintiff to allow the amendment where he has not been put on notice of it and where its necessity, if any, is caused by the defendant's own failure to prove the grounds alleged in her cross-complaint. The request for leave to amend the cross-complaint is denied.
At trial, the plaintiff objected to the admission of additional evidence regarding his alleged habitual intemperance after the defendant admitted he was a good provider. The court allowed such evidence but gave the parties an opportunity to brief the issue of the proper use of this evidence. In their post-trial memoranda the parties now agree that even if the court finds that the evidence presented does not establish the ground of habitual intemperance, the court must consider, among other factors, the causes for the dissolution of marriage in the determination of the distribution of property and alimony and such evidence may be used for that purpose. "Section 46b-51 allows the court to avoid specifying fault for the breakdown of the marriage and allows the parties to avoid calling friends or relatives to testify as to the reasons for the breakdown. . . . In contrast with § 46b-51, under the statutes governing the assignment of the property of the parties or the award of alimony in a contested proceeding, the court is required to consider the causes for the dissolution of the marriage. General Statutes §§ 46b-81,46b-82 . . . If, however the parties choose to litigate the issues of alimony and division of property the causes for the dissolution must be considered by the court." Sweet v. Sweet, 190 Conn. 657, 659-660 (1983).
Conn. Gen. Stat. Section 46b-81 provides that in a dissolution of marriage action "the Superior Court may assign to either the husband or wife all or any part of the estate of the other. In fixing the nature and value of the property, if any, to be assigned, the court. . . . shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . ., the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates." Similar criteria apply to the determination of an award of alimony pursuant to Conn. Gen. Stat. Section 46b-82. "`The difference between an assignment of a specific portion of an estate and alimony is in their purposes. Clark, Domestic Relations (1968) § 14.8. The purpose of property assignment is equitably to divide the ownership of the parties' property. . . . On the other hand, periodic and lump sum alimony is based primarily upon a continuing duty to support.' (Citation omitted.) Blake v. Blake, supra,211 Conn. 497-98." Billings v. Billings, 54 Conn. App. 142, 149-150
CT Page 6452 (1999).
This is a long term marriage of thirty-eight years. Both parties are at the age where their ability to work and acquire future assets is limited. The husband is physically no longer able to work at his previous employment. The wife, who has not been part of the workforce for most of the marriage by choice of both parties, is unlikely to acquire significant income through employment. The plaintiff has health insurance benefits through the Veterans' Administration and will be eligible for Medicare benefits shortly; the defendant does not have the same medical insurance coverage as provided to her during the marriage, and she will be required to continue to purchase her own medical and dental insurance. Therefore, although the facts here would warrant the award of periodic as well as lump sum alimony to the defendant from the plaintiff, the plaintiff does not presently have the income to support a periodic alimony award or the payment of the defendant's medical insurance, as she requests. In any event, the assets of the parties are such that a distribution of a greater proportion of them to the defendant will serve to provide her with some resources to provide for her needs. It is also clear that a significant cause of the breakdown of this marriage was the plaintiff's persistent use of alcohol despite the wife's protestations and the ensuing discord this created in the marriage from early on. Thus, after taking into consideration the criteria required by the statutes and the application of those criteria to the facts found by the court, the court enters the following orders:
1. A decree is entered dissolving the marriage of the parties on the grounds of irretrievable breakdown.
2. The plaintiff shall pay to the defendant one dollar per year alimony.
3. The plaintiff shall transfer all his right, title and interest in the property located at 22 Hillside Drive, Ellington, Connecticut, valued at $171,000, to the defendant by quit claim deed to be executed within thirty days of the date of this judgment. The plaintiff shall retain his interest in the property at 64 Field Road, Somers, Connecticut, valued at $57,000, free of any claim by the defendant. The plaintiff shall also retain his interest in the trailer lot at Sun Valley Cooperative, Inc. in Stafford Springs, Connecticut, valued at $22,500, free of any claim by the defendant.
4. The plaintiff shall retain the 1997 Ford F-350, the 1994 Ford F-350, the 1995 Lincoln and the 1969 Corvette. All are valued at approximately $37,500. The defendant shall retain the 1993 Lincoln Mark VIII, valued at $10,500. CT Page 6453
5. The defendant shall retain the two life insurance policies in her name with Prudential valued at $4,142 and the plaintiff shall retain the four life insurance policies in his name with Prudential valued at $21,942.
6. The defendant shall retain the Savings Bank of Rockville checking account valued at $1,275 and the plaintiff shall retain the Tolland Bank checking account valued at $1,180.
7. The defendant shall retain the All America Financial Annuity in her name valued at $73,353.82.
8. The defendant shall retain the IRAs in her name with Putnam Investment known as Putnam Diversified Income Class A and Class B valued at a total amount of $8,065.18. She shall also retain the SEP IRAs in her name with Oppenheimer known as the Oppenheimer Main Street Growth and Income Class B and Oppenheimer Strategic Income Fund valued at a total amount of $19,456.27. The defendant shall also retain her variable annuity with Pacific Life with a value of $13,919.40.
9. The plaintiff shall retain the Putnam IRAs in his name known as the Putnam Diversified Income Class A and Class B valued in a total amount of $14,153.34. He shall also retain the Oppenheimer SEP IRAs in his name known as the Oppenheimer Main Street Growth and Income Fund and the Oppenheimer Strategic Income Fund Class B valued at a total amount of $18,214.93.
10. The defendant shall transfer all her right, title and interest in the joint brokerage account with Advest valued at $16,089.03 to the plaintiff. The defendant shall transfer all her right, title and interest in the joint money market account with Oppenheimer valued at $1.26 to the plaintiff.
11. The parties shall retain the Prudential stock in their names. The defendant has stock valued at $905 and the plaintiff has stock valued at $3,923.
12. The defendant shall retain the jewelry, valued at $4,500, and the plaintiff shall retain his business equipment, tools and portable shed, valued at $5,500, and his other tools, boat, trailer, hovercraft, yard equipment and International Cub tractors, valued at a total of $8,500, as well as his Sunnybrook trailer which has a negative value.
13. The parties shall divide the household furnishings located at 22 Hillside Drive. The plaintiff shall remove his share of the furnishings as well as any other of the property awarded to him pursuant to this CT Page 6454 judgment which may be located at 22 Hillside Drive from those premises within thirty days.
14. Each party shall be responsible for their own counsel fees.
15. The plaintiff shall be responsible for the debts listed on his financial affidavit and shall be responsible for paying the $450 due the accountant for preparation of the parties' 1999 tax returns and the $926.56 due on the Connecticare health insurance policy and shall indemnify and hold the defendant harmless from any liability for such debts.
In conclusion, the distribution of assets is as follows:
Plaintiff Husband Defendant Wife
64 Field Road, Somers — $ 57,000 22 Hillside Drive, Ellington — $171,000 Sun Valley Lot — $ 22,500 1993 Lincoln Mark VIII — $ 10,500 1997 Ford F-350 — $ 12,000 Prudential Life Ins. Policies — $ 4,142 1994 Ford F-350 — $ 9,500 Savings Bank of Rockville — $ 1,275 1995 Lincoln — $ 9,500 All America Financial Annuity — $ 73,354 1969 Corvette — $ 6,500 Putnam Investment IRAs — $ 8,065 Prudential Life Ins. — $ 21,492 Oppenheimer SEP IRAs — $ 19,456 Policies Tolland Bank — $ 1,180 Pacific Life Annuity — $ 13,919 Putnam Investment IRAs — $ 14,153 Prudential Stock — $ 905 Oppenheimer SEP IRAs — $ 18,214 Jewelry — $ 4,500 Advest Account — $ 16,089 Oppenheimer Account — $ 1 Prudential Stock — $ 3,923 Equipment, tools shed — $ 5,500 Tools, boat, trailer, hovercraft, yard equipment tractors — $ 8,500Total $206,052 $307,116
(40%) (60%)
Jane S. Scholl, J.